**NOT FOR PUBLICATION**                                                                                             **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT FUNK, | : |
|  | : |
|  | : Civil Action No. 08-5208 (FSH) |
| Plaintiff, | : |
|  | : |
| vs. | : **OPINION & ORDER** |
|  | : |
| CIGNA GROUP INSURANCE, et al., | : Date: August 30, 2010 |
|  | : |
| Defendants. | : |

This matter comes before the Court on Plaintiff and Defendants' Cross-Motions for Summary Judgment. The Court has reviewed the parties' submissions pursuant to Fed. R. Civ. P. 78.

**I.     Factual Background**

Plaintiff Robert Funk is making a claim for long term disability income benefits under an employee welfare benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") administered by CIGNA. Plaintiff was a full-time employee of Lucent working to research, design and develop computer software until December 7, 2004. On December 7, 2004, he stopped working due to bipolar disorder and major depression with psychotic features. His salary at that time was $78,500 and he was an eligible employee under the plan.

The standard for qualifying as disabled and receiving benefits for Long Term Disability under CIGNA's plan is two-part. After the employee exhausts 26 weeks of short term disability, the standard for receiving benefits for one year is whether the employee is prevented by the

1

disability from working at his or her previous job for that specific company.  After the first year, there is a more restrictive definition of disability in order to receive benefits under the plan.  The employee must be "incapable of performing the requirements of any job for any employer . . .for which the employee is qualified by training, education or experience, other than a job that pays less than 60% of the eligible employee's eligible pay that would have been in effect on the day preceding the day that the eligible employee's short term disability ceased."  Submission of Defendant, March 5, 2010, Tab 1(a) at FUNK 00145.

Mr. Funk timely applied for long term disability benefits under the plan.  To get his initial claim approved, in June 2005 Plaintiff submitted a questionnaire and medical evidence from his treating psychiatrist and psychologist indicating how severe his symptoms were and how his activities of daily life ("ADLs") were affected.[1]  A consulting psychiatrist for CIGNA, Dr. Mohsin Qayyum, reviewed the forms and spoke to Mr. Funk's therapist, Mr. Libby, and agreed that Mr. Funk was unable to work at his previous job.  Thus CIGNA granted Mr. Funk benefits under the long term disability plan.[2]

---

[1] Plaintiff noted that he was being treated with Effexor, Seroquel, Lamictal, Lampral, and Diovan for his major depression and bipolar disorder.  Mr. Funk's treating psychiatrist, Dr. Curt Pinchuck, filed a report that found Mr. Funk had severe impairment under Axis IV of psychological functioning and a Global Assessment of Functioning ("GAF") score of 40, indicating major impairment in multiple areas of life.  Dr. Pinchuck found that Mr. Funk suffered from "depression, vegetative signs, mood swings, anxiety, auditory and visual hallucinations and paranoia;" was angry, isolative, and paranoid; that he had no ability to deal with people or make judgments; and that all ADLs would be affected by this psychological impairment.  Mr. Funk's psychotherapist, Mr. Sheldon Libby, M.S.W., reported that Mr. Funk showed signs of helplessness and hopelessness, had poor ADLs and poor personal hygiene, confused thought processes, and scores of "fair to poor" on insight, concentration, and judgment.  Submission of Defendant, March 5, 2010, Tab 1(b) at FUNK 00478.

[2] CIGNA acknowledged that changes were made to his job that made it impossible for Mr. Funk to perform it given his bipolar disorder and serious depression, and also noted that Mr. Funk was

Mr. Funk's first year of benefits was set to expire on June 28, 2006. In January 2006, CIGNA began to ask for more documentation to support Mr. Funk's claim under the more restrictive definition of disability that would now apply. Plaintiff submitted a completed questionnaire in March 2006. His psychiatrists responded with additional documentation on July 25, 2006. A CIGNA psychiatrist, Dr. Qayyum, reviewed the submitted paperwork for this cycle, but this time concluded that there was not evidence of severe psychiatric symptoms, such as manic or psychotic episodes, and that there was not sufficient explanation of Plaintiff's anxiety and depression symptoms.[3]

On August 22, 2006, Plaintiff's disability benefits were terminated by CIGNA because it determined that he was no longer disabled under the plan. CIGNA stated that its determination was that he could work "in supportive, low stress, low cognitive demand environment." There was no mention of the "60% of salary" rule that is a part of CIGNA's standard as stated in the plan, nor an analysis of what kind of work Mr. Funk could perform given his psychiatric disorders, nor any finding regarding the salary level of such "low stress, low cognitive demand"

---

abusing alcohol at the time. Mr. Funk was paid benefits by CIGNA under the employee welfare benefit plan for that first year.

[3] After he had written his report regarding Mr. Funk's disability claim dated August 15, 2006, on August 16, 2006, the CIGNA psychiatrist spoke to Mr. Funk's treating psychiatrist, Dr. Pinchuck, and they discussed vocational rehabilitation, Plaintiff's current work status (2-3 hours a day in his wife's coffee shop grinding coffee) and Plaintiff's cognitive ability. Dr. Pinchuck indicated that he would submit additional neuropsychological testing results. While Dr. Qayyum's report was dated August 15, 2006, and he did not review the neuropsychological testing, the denial letter Mr. Funk received from the claims administrator dated August 22, 2006 did reference the testing, which analyzed Mr. Funk's cognitive abilities, as part of the basis for its decision to terminate Mr. Funk's benefits.

work. Plaintiff appealed the August 22, 2006 denial of benefits.[4] Another CIGNA psychiatrist, Dr. Shipko, reviewed Mr. Funk's appeal on a paper record and found that the documentation provided did not support an inability to work.[5] Dr. Shipko also did not analyze the "60% of salary" rule nor Mr. Funk's Social Security benefit documentation. CIGNA's final determination upheld termination of benefits, which exhausted Mr. Funk's administrative remedies and led to the filing of this action.

## II.     Legal Analysis

### A.     Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56©, a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843

---

[4] His attorney submitted documentation to support the appeal, including documentation of disability benefits received from the Social Security Administration and additional reporting from Mr. Funk's therapist, Mr. Libby, which stated that Mr. Funk had marked to extreme functional limitations in concentration, ADLs and social functioning, that treatment response had been fair to poor with side effects, and that these symptoms combined to "hinder sustained gainful employment." Submission of Defendant, March 5, 2010, Tab 1(b) at FUNK 00287.

[5] He based his decision on a statement by Mr. Libby that Mr. Funk's depression was "under control" and the neuropsychological testing's finding that Mr. Funk did not suffer from cognitive impairments (although it noted a moderate level of depression, hopelessness and contrasts between Plaintiff's performance and his self-evaluation). CIGNA issued a denial of Mr. Funk's appeal on May 21, 2007 and, after an additional appeal on November 9, 2007, issued a final letter affirming the denial of the appeal on February 6, 2008.

F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).[6]

### B.   Standard of Review

Where an ERISA-governed benefit plan gives the plan administrator or fiduciary discretion in "interpret[ing] the plan and making benefits determinations," as Defendants have in this case, a court reviewing a benefits denial employs an "arbitrary and capricious" standard. *Skretvedt v. E.I. Dupont De Nemours & Co.*, 268 F.3d 167, 173-74 (3d Cir. 2001). Under this

---

[6] The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id*. at 322-23. This burden can be "discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

standard, the reviewing court must defer to the administrator unless its decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal citations omitted). A court may overturn a plan administrator's conclusion "if it is clearly not supported by evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Id.* at 41. When evaluating claims under the substantial evidence prong, there are multiple factors that should be considered regarding whether a plan's decision was supported by substantial evidence in the ERISA context.[7]

### C. Discussion

CIGNA's denial of Mr. Funk's benefits and its denial of his appeals were arbitrary and capricious because the two decisions issued by CIGNA fail to properly address its own policy standard set forth in the plan and thus fail to comply with the analysis required by the plan. *Id.* at 41. In addition, there are questions raised with regard to all five of the factors discussed in *Glenn* regarding whether the decision was supported by substantial evidence and thus the decisions would be found arbitrary and capricious under the other prong of the *Abnathya* test.

Most significantly, CIGNA did not follow its own standard as stated in the Lucent plan.

---

[7] The factors referenced by the Supreme Court in affirming a recent case in this area were: (1) failure to reconcile their determination with that made by the Social Security Administration; (2) emphasizing one treating physician's report favoring denial while de-emphasizing those contrary, "more detailed treating physician's reports;" (3) failure to provide its experts with all relevant evidence; (4) failure to take into account the effects of stress on the claimant's medical condition; and (5) financial conflict of interest inherent in the way the plan was funded and administered. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2347 (2008). Additional factors considered by other courts in this Circuit have included: reliance on paper-reports of their experts while de-emphasizing treating physicians' reports (similar to factor 2 above) and rejection of subjective/self-reported evidence without a reasonable basis (discussed with factor 4 above). *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F. Supp. 2d 546, 558-63 (W.D. Penn. 2009).

The plan clearly states that the standard for receiving long term disability benefits is that the employee must be "incapable of performing the requirements of any job for any employer . . . for which the employee is qualified by training, education or experience, other than a job that pays less than 60% of the eligible employee's eligible pay that would have been in effect on the day preceding the day that the eligible employee's short term disability ceased." In the August 22, 2006 denial and the May 21, 2007 denial of Mr. Funk's appeal, CIGNA did not discuss whether he was functional enough to make 60% of his prior earnings and did not perform any analysis of Mr. Funk's salary earning potential. The claims manager stated that Mr. Funk had not proved that he "would be unable to work in a supportive, low stress, low cognitive demand environment." Submission of Defendant, March 5, 2010, Tab 1(a) at FUNK 00195. What was completely unaddressed by CIGNA is whether the kind of "supportive, low stress, low cognitive demand" work environment that the claims manager stated that Mr. Funk should be able to perform in could be obtained for a job that paid at least 60% of Mr. Funk's previous earnings.

While Dr. Pinchuck advised CIGNA that Mr. Funk had difficulty in even performing 2-3 hours of supervised work in a coffee shop, there was no discussion in either denial letter regarding the salary that Mr. Funk could be expected to achieve in the supportive, low stress, low cognitive demand work environment described by the claims administrator as appropriate for him. The August 22, 2006 initial denial states that Mr. Funk has "intact computational skills," but it provides no analysis of how such intact computational skills qualify Mr. Funk for a job that will pay him over $47,100 a year in light of his other mental problems. Submission of Defendant, March 5, 2010, Tab 1(a) at FUNK 00195. While CIGNA is not required to do a formal vocational review or additional investigation, it did need to address whether Mr. Funk

could meet the definition of disability dictated by the plan, which included a discussion of the salary he could earn. This failure to address the standard stated in the plan is a failure to follow the procedures required by the plan, and therefore the decisions reached by CIGNA were arbitrary and capricious.

In addition, and as a separate and independent ground, CIGNA would fail to meet the substantial evidence standard set forth in *Abnathya*, 2 F.3d at 41, and articulated in *Glenn*, 128 S. Ct. at 2347. First, CIGNA failed to reconcile the decision of the Social Security Administration ("SSA") with regard to Mr. Funk's disability.[8] Second, the administrator improperly gave greater weight to the one-day neuropsychological examination by Dr. Pancza than it did to all of the evidence from Mr. Funk's long-term treating psychiatrist, Dr. Pinchuck, and his psychologist, Mr. Libby, without setting forth any reason for doing so.[9] Third, CIGNA failed to wait for the

---

[8] While the decision of the SSA is not binding on a private plan, it should be considered when presented as part of the evidence before the administrator. *See Glenn*, 128 S. Ct. at 2347; *Calvert v. Firstar Finance*, 409 F.3d 286, 293-95 (6th Cir. 2005). This omission is even more glaring because CIGNA officials helped Mr. Funk appeal his initial denial for benefits by the SSA and took his benefits once the SSA did approve the reconsideration that CIGNA helped prepare. *See Calvert*, 409 F.3d at 294-95. Mr. Funk not only received Social Security benefits, but was determined by the SSA to need the assistance of a representative payee because he was not capable of managing or being responsible for his own benefits.

[9] Dr. Pinchuck's assessment of Mr. Funk was that he was unable to work and "required vocational rehabilitation for job training and vocational support," even though his cognition was noted as grossly intact, because of his bipolar disorder with symptoms of depression, anxiety, and paranoia. Submission of Defendant, March 5, 2010, Tab 3(a) at FUNK 00198. Dr. Pinchuck specifically noted that because of his mental illness, Mr. Funk was not able to work for more than 2-3 hours at a time in his wife's coffee shop and that his activities of daily life were limited. However, the claims manager cited that "the neuropsychologist Dr. Pancza specified emotional factors were not causing any impairment." Submission of Defendant, March 5, 2010, Tab 1(a) at FUNK 00266. Also, the appeal denial focused on the fact that "the psychological testing indicates mild depression but no cognitive impairment." *Id.* at FUNK 00267. Dr. Pancza's characterization of Mr. Funk's depression as mild contradicts the assessment of long term treating psychiatrist Dr. Pinchuck that it was "severe." *Id.* at FUNK 00195. Per *Glenn*, this is evidence of "emphasizing one treating physician's report favoring denial while de-emphasizing

8

medical evidence that Dr. Qayyam knew was coming before issuing their initial denial.[10]

Fourth, and significantly, the CIGNA claims administrator did not appear to understand the difference between cognition, on the one hand, and mental illness on the other, in deciding whether an individual is able to work at a productive level. CIGNA chose to support its decision primarily with the finding that the Plaintiff has intact cognition, without explaining why it gave virtually no weight to the indicators of mental illness reported by Dr. Pinchuck.[11] Finally, CIGNA also exhibited a financial conflict of interest in the way that the plan for Lucent employees was administered.[12]

---

those contrary, 'more detailed treating physician's reports.'" 128 S.Ct. at 2347.

[10] Dr. Pancza's report was not received by CIGNA before or referenced in the original denial, although it was referenced in part in the appeal decision. Dr. Qayyam wrote and dated his report on August 15, 2006 before he had spoken to Mr. Funk's treating psychiatrist, Dr. Pinchuk, on August 16, 2006. While CIGNA did send a letter to Mr. Funk stating that a nurse had reviewed the supplemental materials, there is no indication that Dr. Qayyum, the physician who recommended denying the claim, had access to all of the relevant information before he made his report and recommendation. This factor alone is not decisive, but, combined with the other evidence of the manner in which this denial was decided, is informative.

[11] While CIGNA noted in the appeal denial that Dr. Pancza, the neuropsychologist, reassured Mr. Funk that he was "capable of performing occupational activities based on [his] cognition," CIGNA ignored the evidence regarding why Mr. Funk could not perform occupational activities based on his documented mental illness, a separate issue from his cognitive skills. Submission of Defendant, March 5, 2010, Tab 1(a) at FUNK 00267. Also, while the CIGNA denial on August 22, 2006 noted that Dr. Pinchuck describes Mr. Funk's mood as depressed, his speech as slow, his impairments as depression, anxiety, and regressive behavior, his axis IV as moderate to severe, his GAF score of only 40, the administrator then ignored these factors when discussing Mr. Funk's ability to work. Cognitively, Mr. Funk may have been intact, but his mental and emotional state was described by his treating psychiatrist and psychologist as socially inept, isolating, hopeless, and unable to drive himself. CIGNA did not state any reasonable basis to separate and not consider the effects of his mental illness on his cognition in evaluating his ability to perform a job at a certain salary level.

[12] Per *Glenn*, if a company is a claim administrator that offers itself to self-funded plans in a competitive market, then its incentive is to keep claims down to be more attractive to potential plans. This is an incentive to over-deny claims, just as if a self-funded plan was paying the

### D. Defendants' Counter-Claim

Defendants seek an equitable lien or constructive trust against Plaintiff for $6,317.00 to recover the remaining portion of a Social Security overpayment that he received in January 2007.[13] At that time, after the termination of Mr. Funk's private benefits by CIGNA, Mr. Funk received $24,817.00 in retroactive benefits from the SSA and immediately paid CIGNA $18,500 of that sum. Mr. Funk retained the remainder of that money at the time to pay his utilities and mortgage bills. Mr. Funk has certified in a sworn affidavit that the $6,317.00 he received at that time is no longer in his possession and this fact is not disputed.[14]

When a specific sum is no longer in the beneficiary's possession, the application of an equitable lien is not procedurally correct. *See, e.g.*, *Reichert v. Liberty Life Assurance Company of Boston*, No. 2518, 2007 U.S. Dist. LEXIS 8347, at *32-33 (D.N.J. Feb. 5, 2007). Contrast *Sereboff v. Mid Atlantic Medical Services, Inc.*, where recovery was allowed because there was "specifically identifiable funds . . . within the possession and control of the Sereboffs." *Id.* at *32 (citing *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S. Ct. 1869, 1874 (2006)). Here, the appropriate cause of action would be to make a legal claim to this amount. That cause of action

---

claims itself. 128 S. Ct. 2343, 2349-50 ("[F]or ERISA purposes a conflict exists . . . An employer choosing an administrator in effect buys insurance for others and consequently (when compared to the marketplace customer who buys for himself) may be more interested in an insurance company with lower rates than in one with accurate claims processing.").

[13] Defendant CIGNA also makes reference to a "deferred pension pay-out" in its brief, but despite discovery being closed, it states that the exact amount of payout is still unknown at this time. Given Defendant's lack of knowledge about this funding, the Court cannot entertain a claim for that money against Mr. Funk as anything other than a legal remedy against Plaintiff and therefore reaches the same conclusion that CIGNA is barred from recovering that sum.

[14] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. Defendant has adduced no evidence that contradicts Plaintiff's sworn affidavit.

cannot be stated as a counterclaim to the ERISA action, and therefore the equitable counterclaim is dismissed. If, once CIGNA commences payment of the disability benefits, it has a legally cognizable claim for a set-off, it may make such claim at that time.

### III. Conclusion

CIGNA's denial of Mr. Funk's application and appeals for Long Term Disability benefits was arbitrary and capricious under the standard articulated in *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40 (3d Cir. 1993).

**THEREFORE IT IS** on this 30th day of August, 2010,

**ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that Defendants' Cross-Motion for Summary Judgement is **DENIED**; and it is further

**ORDERED** that CIGNA award Mr. Funk retroactive benefits from the date of his August 22, 2006 denial to the present, less the amount he received in Social Security benefits during that time period; and it is further

**ORDERED** that CIGNA reinstate Mr. Funk's ongoing Long Term Disability benefits, subject to its standard periodic reviews, and CIGNA is instructed to ensure that its evaluation of Mr. Funk is consistent with its stated disability standard; and it is further

**ORDERED** that Defendants' Counter-Claim is **DISMISSED**; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.